UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MATERIAL HANDLING PRODUCTS CORP.,

                Plaintiff,

v.                                        1:11-CV-0118 (GTS/DRH)

NACCO MATERIALS HANDLING GROUP, INC.,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| PHILLIPS LYTLE LLP<br>  Counsel for Plaintiff<br>Omni Plaza<br>30 South Pearl Street<br>Albany, NY 12207 | KELLY M. LESTER, ESQ.<br>MARC H. GOLDBERG, ESQ.<br>RICHARD E. HONEN, ESQ. |
| HANCOCK & ESTABROOK, LLP<br>  Counsel for Defendant<br>1500 AXA Tower I<br>Syracuse, NY 13221 | ASHLEY D. HAYES, ESQ. |

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court in this breach-of-contract action is a motion for a temporary restraining order ("TRO") and preliminary injunction filed by Material Handling Products Corporation ("Plaintiff") against Nacco Materials Handling Group, Inc. ("Defendant"). (Dkt. No. 7.) For the reasons stated below, Plaintiff's motion for a temporary restraining order is granted, decision on Plaintiff's motion for a preliminary injunction is reserved, and the parties are directed to appear before this Court at 1 p.m. on Thursday, February 17, 2011, for oral argument on the issue of whether the TRO should be converted to a preliminary injunction and/or revoked.

**I.      RELEVANT BACKGROUND**

On January 27, 2011, Plaintiff filed a motion for a TRO and preliminary injunction in New York State Supreme Court.  (Dkt. No. 1.)  It appears that Defendant did not oppose Plaintiff's request.  On January 28, 2011, Plaintiff was granted a TRO, which enjoined Defendant from (1) terminating Plaintiff's long-standing written Dealer Selling Agreement ("Agreement"), and (2) communicating to any of Plaintiff's customers or known prospective customers any information relative to the Agreement.  A hearing on the TRO was scheduled for February 10, 2011.

On February 3, 2011, Defendant removed the action to this Court.  (Dkt. No. 1.)  Plaintiff now seeks an Order "continuing" the TRO, and enjoining Defendants from terminating Plaintiff's long-standing written Dealer's Agreement, pending a final determination in this action.  (*Id.*)  (Dkt. No. 7.)

**II.     ANALYSIS**

Pursuant to the well-known legal standard governing motions for temporary restraining orders,[1] a party seeking such relief must establish two things.  First, the party must establish a likelihood of irreparable harm if the requested relief is denied.  Second, the party must establish either (a) a likelihood of success on the merits of its case, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor.

---

[1] "The legal standards for granting a temporary restraining order and a preliminary injunction are the same." *Young-Flynn v. Wright*, 05-CV-1488, 2007 WL 241332, at *7 (S.D.N.Y. Jan. 26, 2007) (quoting *Gund, Inc. v. SKM Enters., Inc.*, 01-CV-0882, 2001 WL 125366, at *1 [S.D.N.Y. Feb. 14, 2001]).

       1.       **First Requirement–Likelihood of Irreparable Harm**

          a.       **Findings of Fact**

Based on the affidavit testimony of Scott Minich, the Verified Complaint, and exhibits thereto, the Court finds as follows: (1) Plaintiff is a small, family-owned business that has been a dealer of Defendant's forklifts since 1953; (2) Defendant is a corporation that designs, engineers, manufactures, sells, leases and services branded lift-trucks, including forklifts, and related after-market parts; (3) during the more than forty-year relationship between Plaintiff and Defendant, Plaintiff has disclosed to Defendant significant amounts of proprietary and confidential business information; (4) having been in business for more than fifty years as Defendant's franchisee, Plaintiff has established relationships with its customers, financiers, and employees, the value of which to Plaintiff is not readily calculable; (5) Plaintiff's company has several employees who have been trained, at Plaintiff's expense, to service and maintain Defendant-branded lift trucks, which training is not readily transferable to another manufacturer's products; and (6) on August 31, 2010, Defendant sent Plaintiff a letter, which indicated that Plaintiff had failed to meet the agreed requirements for 2010, and in three of the last four years, and therefore, Plaintiff's dealership appointment would be terminated on January 31, 2011.

          b.       **Conclusion of Law**

As a result, the Court concludes that Plaintiff has established a likelihood of irreparable harm if the requested relief (i.e., a TRO pending a hearing on Plaintiff's motion for a preliminary injunction) is denied.

### 2. Second Requirement–Probability of Success on Merits

#### a. Findings of Fact

Based on the affidavit testimony of Scott Minich, the Verified Complaint, and exhibits thereto, the Court finds as follows: (1) the relationship between Plaintiff and Defendant is governed by the Agreement, which was entered into by Plaintiff and Defendant's predecessor, Industrial Truck Division, Eaton Corporation, in 1971; (2) until 2010, the custom and practice of the parties under the Agreement was to agree upon the terms of the annual operating plan; (3) it was also the custom and practice of the parties for the annual market share projection, determined by Defendant, to be a "target" or goal, rather than a minimum acceptable level of performance; (4) in 2010, Defendant required Plaintiff to predict the effect that national account sales would have on Plaintiff's market share; (5) Plaintiff does not control national account sales in its territories, and therefore has no way of predicting the activities in the territories in the upcoming year; (6) in 2010, Defendant also unilaterally changed the operating plan to include a signature page and acknowledgment that the annual market share projection was a minimum acceptable level of performance; (7) these changes were contrary to the express terms of the Agreement; (8) Plaintiff did not sign the 2010 operating plan; (9) in addition, Plaintiff relied on Defendant's inaccurate national accounting reporting to develop Plaintiff's sales goals for 2010; (10) on August 31, 2010, Defendant sent Plaintiff a letter, which indicated that Plaintiff had failed to meet the agreed requirements for 2010, and in three of the last four years, and therefore, Plaintiff's dealership appointment would be terminated on January 31, 2011; (11) Plaintiff received Defendant's Dealer of Value Award in 2007 and 2009; (12) Plaintiff was not below its market share goal in 2007, 2008, or 2009, and could not have been below its market share goal if

it received this award; (13) for these reasons, Defendant is unable to establish that Plaintiff is not a dealer in "good standing" under the Agreement; (14) Defendant breached the Agreement by failing to adopt policies and procedures based on an "objective periodic evaluation of the operations and operating results of authorized dealers as a group"; (15) Defendant also failed to measure Plaintiff's "good standing" using the formula expressly prescribed by the Agreement; and (16) Defendant's termination was coercive, in violation of N.Y. Gen. Bus. § 33-A.

    **2.**    **Conclusion of Law**

As a result, the Court concludes that–at this preliminary stage of the proceeding, based solely on Plaintiff's papers–Plaintiff has established a likelihood of success on the merits, or, at a minimum, Plaintiff has presented grave and serious questions to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor questions.

**III.**    **NATURE OF TEMPORARY RELIEF GRANTED**

    **A.**    **Bond Required**

Plaintiff shall file a bond with, or give other security to, the Clerk of the Court in the amount of five thousand dollars ($5,000) no later than 5:00 p.m. on Wednesday, February 16, 2011, to secure payment of costs for damages sustained by Defendant, in the event it is found to have been wrongfully enjoined or restrained.  <u>However, this Decision and Order is effectively immediately</u>.

    **B.**    **Scope of Temporary Restraining Order**

Upon the Memorandum of Law in Support of Plaintiff's application for a Preliminary Injunction and Temporary Restraining Order dated February 10, 2011, the Affidavit of Scott Minich dated February 10, 2011, the Affidavit of Kelly Mooney Lester dated February 11, 2011,

and the papers submitted in the New York State Supreme Court Action, namely, the Order to Show Cause and Temporary Restraining Order dated January 28, 2011, the Verified Complaint dated January 27, 2011, the Affidavit of Scott Minich dated January 27, 2011, the Affidavit of Kelly Mooney Lester dated January 27, 2011, and upon all the papers and proceedings heretofore had herein, and to prevent irreparable harm that may result and to preserve the status quo pending a determination in this matter; it is hereby

**ORDERED** that Defendant and/or its attorney show cause before a motion term of this Court, at Courtroom 4, James Hanley Federal Building, 100 South Clinton Street, Syracuse, New York 13261 on the 17th day of February, 2011 at one o'clock in the afternoon of that day, or as soon thereafter as counsel can be heard, why an Order should not be issued pursuant to Fed. R. Civ. P. 65:

(a) Preliminarily and otherwise enjoining Defendant, and any of its employees, agents, affiliates, dealers, or other related persons or entities from terminating the Agreement among Plaintiff and Defendant dated December 15, 1971, as amended; and

(b) Preliminarily and otherwise enjoining Defendant, and any of its employees, agents, affiliates, dealers, or other related persons or entities during the pendency of this action, from communicating to any of Plaintiff's customers or known prospective customers any information relative to the Agreement, including but not limited to, any proposed or potential termination or alteration of the Agreement, or Plaintiff's alleged status thereunder; and

    (c)    Preliminarily and otherwise enjoining Defendant, and any of its employees, agents, affiliates, dealers, or other related persons or entities during the pending of this action, from using any of Plaintiff's data, information, orders, customer lists, customer prospect lists, or other business communication s for purposes of competing, directly or indirectly, with Plaintiff in its sales territories in New York and Vermont; and

    (d)    Granting such other, further or different relief as to this Court may seem proper; and it is further

**ORDERED** that sufficient reason having been shown therefore, pending the hearing and determination of Plaintiff's application for a Preliminary Injunction pursuant to Fed. R. Civ. P. 65, the Defendant and any of its employees, agents, affiliates, or other related persons or entities are temporarily enjoined and restrained, until further order of this Court as follows:

    (a)    Enjoining Defendant, and any of its employees, agents, affiliates, or other related persons or entities from terminating the Agreement, and

    (b)    Enjoining Defendant, and any of its employees, agents, affiliates, or other related persons or entities from communicating to any of Plaintiff's customers or known prospective customers any information relative to the Agreement, including but not limited to, any proposed or potential termination or alteration of the Agreement, or Plaintiff's alleged status thereunder, and

    (c)    Granting such other, further and different relief as this Court may deem proper; and it is further

**ORDERED** that answering papers, if any, shall be filed by 12:00 noon on Wednesday, February 16th, 2011; and it is further

**ORDERED** that Plaintiff shall file a bond with, or give other security to, the Clerk of the Court in the amount of five thousand dollars ($5,000) no later than 5:00 p.m. on Wednesday, February 16, 2011, to secure payment of costs for damages sustained by Defendant, in the event it is found to have been wrongfully enjoined or restrained.  However, this Decision and Order is effectively immediately.

Dated: Syracuse, New York
       February 10, 2011

_____
Hon. Glenn T. Suddaby
U.S. District Judge