UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MATERIAL HANDLING PRODUCTS CORP.,

      Plaintiff,

v.               1:11-CV-0118
               (GTS/DRH)

NACCO MATERIALS HANDLING GROUP, INC.,

      Defendant.
_____

APPEARANCES:           OF COUNSEL:

PHILLIPS LYTLE LLP        KELLY M. LESTER, ESQ.
 Counsel for Plaintiff        MARC H. GOLDBERG, ESQ.
Omni Plaza           RICHARD E. HONEN, ESQ.
30 South Pearl Street
Albany, NY 12207

FOLEY & LARDNER, LLP       MICHAEL J. LOCKERBY, ESQ.
 Counsel for Defendant
Washington Harbour
3000 K Street, NW, Suite 600
Washington, DC 20007

HANCOCK & ESTABROOK, LLP     ASHLEY D. HAYES, ESQ.
 Counsel for Defendant
1500 AXA Tower I
Syracuse, NY 13221

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

  Currently before the Court, in this breach-of-contract action filed by Material Handling Products Corporation ("Plaintiff") against Nacco Materials Handling Group, Inc. ("Defendant"), is Plaintiff's motion for a preliminary injunction against Defendant (Dkt. No. 7), and Defendant's cross-motion to dissolve and/or vacate the Temporary Restraining Order ("TRO")

that was issued by the Court on February 11, 2011, extended for the first time on February 25, 2011, and extended for the second time at the conclusion of the Show Cause Hearing held on March 3, 2011 (Dkt. No. 15). For the reasons stated below, Plaintiff's motion for a preliminary injunction is denied, and Defendant's cross-motion to dissolve and/or vacate the TRO is denied as moot.

I.   **RELEVANT BACKGROUND**

On January 27, 2011, Plaintiff filed a motion for a TRO and preliminary injunction in New York State Supreme Court. (Dkt. No. 1.) At the time, it appears that Defendant did not oppose Plaintiff's motion. (*Id*.) On January 28, 2011, Plaintiff was granted a TRO, which enjoined Defendant from (1) terminating Plaintiff's long-standing written Dealer Selling Agreement ("Agreement") with Defendant, and (2) communicating to any of Plaintiff's customers or known prospective customers any information relative to the Agreement. (*Id*.) A hearing on the TRO was scheduled for February 10, 2011. (*Id*.) On February 3, 2011, Defendant removed the action to this Court. (*Id*.)

On February 11, 2011, Plaintiff filed a motion for a TRO and preliminary injunction in this Court. (Dkt. No. 7.) On February 11, 2011, this Court issued a Decision and Order granting Plaintiff's motion for a TRO, and enjoining Defendants from terminating Plaintiff's long-standing written Dealer's Agreement, pending a final determination in this action. (Dkt. No. 9.) Also in that Decision and Order, the Court reserved decision on Plaintiff's motion for a preliminary injunction, and scheduled a Show Cause Hearing ("Hearing") for February 17, 2011, on that motion. (*Id*.) On February 14, 2011, with consent of all parties, the Hearing was rescheduled for March 3, 2011. (*See* Text Notice filed Feb. 14, 2011.) On February 25, 2011,

the Court issued a Decision and Order extending the temporary restraining order for a period of fourteen (14) days until 4:37 p.m. on Friday, March 11, 2011. (Dkt. No. 16.) On March 3, 2011, the Hearing was held. At the conclusion of the Hearing, the Court stated on the record that the TRO would be extended until the Court issued a Decision and Order on Plaintiff's motion for a preliminary injunction and Defendant's cross-motion to dissolve the TRO. This is that Decision and Order.

## II.    ANALYSIS

Pursuant to the well-known legal standard governing motions for preliminary injunctions, a party seeking such relief must establish two things. First, the party must establish a likelihood of irreparable harm if the requested relief is denied. Second, the party must establish either (a) a likelihood of success on the merits of its case, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor.

### A.    First Requirement–Likelihood of Irreparable Harm

#### 1.    Findings of Fact

Based on the affidavit testimony of Scott Minich, the Verified Complaint (and exhibits thereto), the affidavit of Robert Sattler (and exhibits thereto), and the testimony at the Hearing of Scott Minich and Robert Sattler, the Court finds as follows: (1) Plaintiff is a small, family-owned business that has been a dealer of Defendant's forklifts since 1953; (2) Defendant is a corporation that designs, engineers, manufactures, sells, leases and services branded lift-trucks, including forklifts, and related after-market parts; (3) during the more than forty-year relationship between Plaintiff and Defendant, Plaintiff has disclosed to Defendant significant

amounts of proprietary and confidential business information; (4) having been in business for more than fifty years as Defendant's franchisee, Plaintiff has established relationships with its customers, financiers, and employees, the value of which to Plaintiff is not readily calculable; (5) Plaintiff and Defendant currently do business under the Agreement, which will be terminated unless Plaintiff's motion for a preliminary injunction is granted; (6) Plaintiff's company has several employees who have been trained, at Plaintiff's expense, to service and maintain Defendant-branded lift trucks (as well as lift trucks from other manufacturers); (7) the only new lift trucks that Plaintiff sells are Defendant-branded lift trucks; (8) in the event that the Agreement is terminated, Plaintiff will no longer be able to sell new Defendant-branded lift trucks and parts for these lift trucks that can only be obtained from Defendant; (9) in the event that the Agreement is terminated, Plaintiff will continue to be able to (a) sell used Defendant-branded lift trucks, and parts for Defendant-branded lift trucks that it can obtain from companies other than Defendant, (b) maintenance and service Defendant-branded lift trucks (as well as lift trucks from other manufacturers), and (c) rent Defendant-branded lift trucks (as well as lift trucks from other manufacturers); (10) Scott Minich and a business partner purchased Plaintiff from Minich's father in 2007; (11) in order to pay for Plaintiff, Scott Minich and his partner took out a loan from a bank; and (12) in the event Plaintiff loses the ability to sell Defendant-branded products, the Bank who provided the loan has the "ability to call the loan."

    Pursuant to the confidentiality agreement protecting from disclosure the testimony provided at the Hearing (as well as the relevant exhibits introduced during that Hearing), the Court sets forth its additional findings of fact in the document attached to this Decision and Order, and designated as "Sealed Exhibit A."

**2.     Conclusion of Law**

Based on these facts, the Court concludes, for three reasons, that Plaintiff has failed to establish a likelihood of irreparable harm if the requested relief (i.e., a preliminary injunction pending a determination of Plaintiff's underlying action) is denied.  First, the record establishes that, even if the Agreement were terminated, a majority of Plaintiff's business has the potential to be undisturbed; and Plaintiff has failed to satisfy its evidentiary burden (on a motion for a preliminary injunction) of establishing the contrary–i.e., that it will lose rental, maintenance, service and/or parts customers of Defendant-branded products.[1]  Rather, Scott Minich testified that (1) he "could not predict[,] if [Plaintiff] were to lose the [ability to sell new Defendant-branded lift trucks,] whether or not [Plaintiff] would be able to recover some of those losses because [he does not] know whether or not [Plaintiff] is going to ever be able to replace some of those agreements,"[2] and (2) he *thought* that he would lose a sales quote extended to a certain current customer.[3]  *See Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991) (noting that "a mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction").

Second, even assuming that it was not just speculation on the part of Scott Minich that

---

[1]     *See Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) ("Where the loss of a product with a sales record will not affect other aspects of a business, a plaintiff can generally prove damages on a basis other than speculation. Where the loss of a product will cause the destruction of a business itself or indeterminate losses in other business, the availability of money damages may be a hollow promise and a preliminary injunction appropriate.").

[2]     (Hearing Tr. at 84.)

[3]     (Hearing Tr. at 23 [testifying that Plaintiff currently has an outstanding quote from a large fleet customer "that's our customer right now . . . . And I think they would decide to go with the alternative [if Plaintiff can no longer new Defendant-branded lift trucks]".)

Plaintiff would (if the Agreement were terminated) lose rental, maintenance, service and/or parts customers of Defendant-branded products, the amount of business that Plaintiff would lose as a result of not being able to sell new Defendant-branded truck lifts and certain parts is sufficiently quantifiable, as demonstrated by the figures set forth in Exhibit A to this Decision and Order;[4] and there is no evidence that the loss would constitute the loss of Plaintiff's entire business. *See Borey*, 934 F.2d at 34 (noting that "[a] monetary loss will not suffice [to establish irreparable harm] unless the movant provides evidence of damage that cannot be rectified by financial compensation[, which] might include, for example, proof that the monetary loss will probably force the party into bankruptcy. . . .  But, when a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary equitable remedy of a preliminary injunction should be granted"); *Park W. Radiology v. CareCore Nat'l LLC*, 240 F.R.D. 109, 113 (S.D.N.Y. 2007) (denying preliminary injunction where movant did not show that its services were "so unique that any alleged damages resulting from its inability to market and sell them could not be easily quantified").

Third, Plaintiff has failed to establish that it cannot be successful selling truck lifts and parts manufactured by Defendant's competitors.  In fact, Scott Minich testified that (1) Plaintiff currently offers operator training services on "competitive forklifts,"[5] (2) Plaintiff currently sells "preowned inventory" of competitive manufacturers,[6] and (3) if he was to sell a competitor's

---

[4] The Court notes also that Scott Minich testified that he and his partner purchased Plaintiff in 2007, which further suggests that it is, in fact, possible to place a value on the various parts that comprise Plaintiff's business.

[5] (Hearing Tr. at 68.)

[6] (Hearing Tr. at 65-66.)

product and not have the ability to sell Defendant-branded new truck lifts, there would simply "be some differences and nuances" associated with employee training.[7] *See Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37-38 (2d Cir. 1995) (noting that, while the loss of "prospective goodwill," that is, the potential benefits to a business from selling an essential or unique product, can be irreparable harm, "[p]roducts that are successful but have reasonable substitutes" do not qualify as unique opportunities under this standard); *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 763 (2d Cir. 1979) (finding no irreparable harm where piano manufacturer attempted to terminate its dealership contract with a retail seller that sold many brands of musical instruments), *superseded by statute*, Fed. R. Civ. P. 52(a), *as recognized in Weissmann v. Freeman*, 868 F.2d 1313 (2d Cir. 1989).[8]

### B. Second Requirement–Probability of Success on Merits

Having concluded that Plaintiff has failed to establish a likelihood of irreparable harm if the requested relief is denied, the Court need not, and does not, address Plaintiff's probability of success on the merits.[9] *Passlogix, Inc. v. 2FA Tech., LLC*, 08-CV-10986, 2010 WL 2505628, at *11 (S.D.N.Y. June 21, 2010) ("Having concluded that 2FA cannot 'meet its burden of

---

[7]   (Hearing Tr. at 22.)

[8]   The Court notes that Scott Minich testified that, in the event Plaintiff loses the ability to sell Defendant-branded products, a bank–which provided him (and his partner) the loan to purchase Plaintiff–has the "ability to call the loan." (Hearing Tr. at 20.) However, Plaintiff has failed to provide the Court with a copy of the bank note that indicates this fact. (*See generally* Docket Sheet.) In addition, and more importantly, even assuming that the bank has "the ability to call the loan," Plaintiff has failed to adduce record evidence establishing that the bank will likely do so.

[9]   The Court notes also that, because Plaintiff's TRO expires pursuant to the issuance of this Decision and Order, Defendant's motion to vacate and/or dissolve the TRO is denied as moot.

demonstrating a likelihood of irreparable harm if the requested relief is denied, the Court need not consider the likelihood of success on the merits or the balance of equities."); *see also Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 68 (2d Cir. 2007) ("The finding of no showing of irreparable harm is dispositive."). However, two points warrant mentioning.

First, while Plaintiff received notice that it was being placed on probation in 2009, it is not at all clear whether Plaintiff remained on probation in 2010. In the event that Plaintiff was not on probation in 2010, it is appears entirely possible–at least based on the current record–that Defendant's notice of termination letter, sent on August 31, 2010, violates the multi-step termination procedure set forth in the Agreement.

Second, it is not at all clear that Defendant measured Plaintiff's good standing by the weighted average of all Defendant-authorized dealers. In the event that Defendant determined that Plaintiff was (and is) not in good standing under a different standard, it is appears entirely possible–again, at least based on the current record–that Defendant's termination of Plaintiff as a dealer based on the determination that Plaintiff was not in good standing may violate the Agreement.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for a preliminary injunction (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED** that Defendant's cross-motion to dissolve and/or vacate the TRO (Dkt. No. 15) is **DENIED** as moot.

Dated: Syracuse, New York
       March 28, 2011

Hon. Glenn T. Suddaby
U.S. District Judge

8